ANDERSON, J.
This is an action of trespass on the case upon account, brought by the plaintiff in error against the Board of Public Works. The alleged ground of action may be succinctly stated as follows: That a contract had been made by the firm, of which the plaintiff is the survivor, with the Board of Public Works, to construct a section of the Blue Ridge railroad, including the tunnel and its approaches. That this contract was afterwards abandoned by mutual consent, and a new contract made by the Board with Kelly & Larguey, of whom the plaintiff is the survivor, *by which the Board of Public Works agreed to pay them monthly their actual expenditure upon the work, an account of which was to be kept by a clerk to be appointed by the Board, who was to have free access to all books, papers and accounts throwing light upon the cost of execution, and to make return thereof monthly to the Board, and that upon the completion of the work, to the satisfaction of the Board, they were to be paid, in lieu of all other profits, “ten per cent, on actual expenditure, in conformity with their contract of $200,000, with a deduction of two per cent, on any excess over and above the expenditure of $200,000, or an addition of two per cent, also on any reduction from the same.” That Kelly & Larguey had faithfully executed the work, and completed it to the entire satisfaction of the Board, but had not been paid the whole of their actual expenditure upon the work, and that there was a balance of $10,491.97, which had not been paid, and was still due and owing them from the said Board of Public Works; for the recovery of which this suit was brought. There was a general demurrer to the declaration, and to the amended declaration, and to each count thereof, which was sustained as to some of the counts, and overruled as to others; and the plaintiff took issue upon the pleas of non assumpsit, and non assumpsit within five years. There was a verdict and judgment for the defendant, and the case comes here upon a writ of error. The question which meets us at the threshold is, Will the action lie against the Board of Public Works? Is it a body corporate, capable of suing and being sued?
By the act of assembly of February 5, 1816, § 3, the Board of Public Works is created a corporate body, to be styled “the President and Directors of the Board of Public Works,” with perpetual succession and ^capacity to sue and be sued, to plead and be impleaded, with all the rights and privileges of a corporation.
It is enacted, chap. 66, \ 1, p. 339, of Code of 1849, “that the governor, treasurer, two auditors, and register of the land office, shall be a corporation under the style of the Board of Public Works, and be vested with all the rights and powers now vested in the president and directors of the Board of Public Works, or in any corporation composed of officers of government that has been created for any work of internal improvement of which the state is sole owner. ’ ’ This board is a successor to the Board of Public Works organized under the act of 1816, and expressly invested with its rights and powers; among which is the capacity of contracting, of suing and being sued, cf pleading and being impleaded; and in addition, with all the rights and powers vested *552 in any corporation composed pf officers of government, created for any work of internal improvement of which the state is sole owner. It was with the Board of Public Works organized under this statute that the contract in this suit was made by the plaintiff in error and his deceased partner.
Whilst said contract was being executed, a new Board of Public Works was organized under the constitution of 1851, with whom the execution of the contract was completed, and by whom it was virtually sanctioned and approved. This board was composed of three commissioners, elected by the voters of their several districts, into which the state was divided, and its organization was to be provided for by the general assembly. (Art. 5, $ 14 and 15, of constitution of 1851.) In pursuance thereof it was enacted by the general assembly, “that the commissioners of public works and their successors shall be a corporation under the *style of ‘the Board of Public Works,’ and be vested with all the rights and powers now vested in the Board of Public Works; shall in all respects conform to the provisions of the existing laws regulating the present Board of Public Works, except so far as said laws may be inconsistent with this act, and the act regulating the commissioners of the sinking fund; and the powers and ácts of the Board of Public Works, as now organized, shall cease and determine so soon as the board elected under this act shall be organized, and be transferred to and vested in the Board of Public Works, organized by this act. ’ ’ This board is thus made the successor of the preceding board, and is invested with its rights and powers, among which was the capacity of suing and being sued, pleading and being impleaded. It was against the Board of Public Works thus constituted and organized, that the plaihtiff in error brought his action, and which was defended by its successor, the board organized under the present constitution.
The constitution of 1851 declares “there shall be a Board of Public Works to consist of three commissioners, ’ ’ and then goes on to direct that the state shall be divided into three districts, and that the voters of each district shall elect one commissioner, &c. The existing constitution, like the former, declares there shall be a Board of Public Works; but, unlike the former, to consist of the governor, auditors and treasurer of the commonwealth, under such regulations as may be prescribed by law. We have seen that certain regulations had been prescribed by law for the Board of Public Works; such as that it should be a corporate body, having perpetual succession, and being capable of suing and being sued in its corporate name, &c. No changes have since been made in *the law with regard • to the Board of Public Works. No new regulations have been prescribed by law. It exists under precisely the same regulations that it did before the change of constitution, except that it is composed of a different class of public officers. It is the same Board of Public Works, invested with all the rights and powers with which it was invested, and subject to the same regulations to which it was subject before the change of constitution. By the schedule to the constitution, § 1, “the common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until altered,” &c.
The practice has accorded with this construction. • There are precedents of suits maintained against the Board of Public Works. Enders v. Board of Public Works, 1 Gratt. 364, 372. And it appears from this record that this plaintiff maintained an action against the Board of Public Works, and recovered judgment without question of his right to sue. I am of opinion, therefore, that this action lies against the Board of Public Works, and that the demurrer is not sustainable on the ground that it does not. And without indicating an opinion as to the authority of the Board of Public Works to make sale of state bonds, I cannot hold that any of the counts are bad upon general demurrer.
. Upon the trial the plaintiff excepted to the ruling of the court, excluding parol testimony which he offered, to prove that the claim for which he brought this suit was not embraced in a former judgment.
The rule laid down in the Duchess of Kingston’s case (20 Howell St. Trials 355, 538), is, that the judgment of a court of concurrent jurisdiction directly upon the point, is, as a plea, a bar, or as evidence, conclusive between the same parties, upon the same matter, directly *in question in another court. The judgment in the former suit must be directly on the point which is in question in the subsequent suit, to make it a bar when pleaded, or conclusive when relied on as evidence. A judgment concludes the parties only as to the grounds covered by it, and the facts necessary to uphold it. Cowen & Hill’s notes to Phillips' Ev., 4th volume, p. 826, note 587. In Seddon v. Tutop, 6 T. R. 607, it was held that when a plaintiff in a former action had declared on a promissory note, and for goods sold, but on executing the writ of inquiry gave no evidence on the count of goods sold, the judgment was not a bar to his recovery for the goods sold, in another action. The decision was upon the broad ground, that the cause of action in the second suit had not, in fact, been litigated in the first. And the judges refer to Hitchin v. Campbell, 2 Wm. Black. R. 827; 3 Wil. R. 304, where the' principle is conceded, that if the real merits of the second action .have not been decided in the first, the prior judgment is no bar. This principle is consistent with the rule laid down in the Duchess of Kingston’s case, supra, and is reasonable and just. I am not aware that it has ever been seriously controverted.
But upon the question, whether parol proof is admissible to show what matters were litigated and decided in the former suit, the decisions have not been so uni *553 form. But the great preponderance of American authority, as is said by the writer of the notes to Phil. Ev. supra, is in favor of the admission of parol evidence. Whenever a question is raised as to the identity of the matters litigated in the first suit, parol evidence is admissible, to explain what transpired on the former trial. Parker v. Thompson, 3 Pick. R. 490; Cist v. Zeizler, 16 Serg. & Rawle R. 282, 285; Stevens *v. Payne, 2 Roots R. 83; Wood v. Jackson, 8 Wend. R. 9; Burt v. Sternburgh, 4 Cowens R. 559; Gardner v. Buckbee, 3 Id. 120. These cases are cited in support of this doctrine in Cowens & Hill’s notes to Phillips on' Evidence, 4th volume, p. 838-9, note 590. And it does seem to me, as the writer says it appears to him, that it is indispensable to the efficient administration of justice. As is said by Parker, C. J., in Parker v. Thompson, every fact which exists on record must be proved by the record; but when the question is as to the real subject matter of a suit, or to show a bar to another suit, or to lay the foundation of an action of indemnity, the identity of the cause of action may be proved by other than record evidence. But if the record shows that the first suit was apparently for the same cause of action litigated in the second suit, it will be prima facie evidence that such cause of action has once passed in rem judicature; and hence the onus will devolve upon the party against whom the record is used, to show the contrary. 4 Vol. Notes to Phillips on Evidence supra, and cases cited. And this should be done by clear and decisive testimony.
Now to apply these principles to the case in hand, the defendant had given parol testimony, tending to show a former recovery. To contradict which, the plaintiff read in evidence the judgment from the order book of the court, proved the loss or destruction of all the papers and other records of the case, and offered parol testimony to prove that the matter in controversy in this suit was not embraced in the former judgment; which testimony was excluded by the court. The order read in evidence shows upon its face the grounds of the judgment of the court, and what was the matter in issue between the parties in that suit upon the case agreed. It shows that the only question ^submitted to the court was the question as to what was due the plaintiff on account of the commission he was to receive as a compensation for his services in lieu of all other profits, and that that is the only matter covered by the judgment. The order shows also that it was a case agreed by the parties, in order to get the judgment of the court upon this question of commissions; that no proceedings were had at rules, but that the plaintiff by his attorney filed his declaration by consent of the attorney general, and that on his motion, and by like consent, it was ordered that the proceedings at rules be dispensed with, and the cause placed on the docket of the court. These statements of record justify the inference, that only the question of commissions was submitted to the court, and also that the only claim set out in the declaration was for the commissions, the facts agreed showing that that was the only matter submitted to the court for its decision, and the declaration being prepared at the time, and filed in court by consent, and not at rules, and the case being at once placed on the court docket, the presumption is, that the declaration, prepared with reference to the question agreed to be submitted, would only claim what was agreed to be submitted to the court. And I am inclined to think that it sufficiently appears upon the face of the order itself that the matter litigated in this suit was not in issue in that, and is not embraced in the former judgment; at least it is so prima facie, and the onus devolved on the defendant to show the contrary. The two claims might have been embraced in different counts in the one suit. But they are distinct divisible claims, depending on separate contracts, made at different times and upon different principles; and the evidence to support one is not necessary to support the other, but much of it that *would be material to sustain the one would be irrelevant to the other. I do not think therefore that the plaintiff was bound to unite both causes of action in one. At any rate, if the adverse party was willing to agree a case as to one, and to submit it at once, and without the delay of formal pleading to the judgment of the court, and was not willing to submit the other, his withholding the other claim for subsequent adjustment ought not to debar him from the right of action afterwards to recover it. The case of Seddon v. Tutop, supra, which is a leading case, and is law now, is not as strong a case for the plaintiff as this. In that case the plaintiff declared for both claims — the promissory notes and the account for goods sold, but in different counts; and it being proved (I take it by parol) that he gave no evidence on the count for goods, in executing the writ of enquiry, his subsequent action for the goods was sustained, upon the ground that the matter therein controverted had not been litigated and decided in the former suit. The parol evidence, which was excluded from the jury in this case, I think removes all doubt, and fully confirms the inference which I draw from the judgment, which was read in evidence, and shows clearly that the matters involved in this suit were not involved in that, nor embraced in the judgment. The loss or destruction of the papers in the cause, and the whole of the record, except this order, as was proved, is a further reason why the parol evidence should have been admitted. I am of opinion that the Circuit court erred in excluding the parol testimony.
Upon the second bill of exceptions I am clearly of opinion that there is error in the instructions given to the jury, that the judgment in the former suit was a bar to any recovery by the plaintiff in this action, and that they must find for the de *554 fendants. This conclusion *is a cor-rollary, from what has already been said with regard to the first bill of exceptions. Without intimating any opinion with regard to the merits of this controversy, I am of opinion, for the reasons given, to reverse the judgment, set aside the verdict, and remand the cause, with instructions to admit the parol testimony if it is again offered.
The other judges concurred in the opinion of Anderson, J.
Judgment reversed.